**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **YVONNE GABEL, AND ALL OTHERS SIMILARLY SITUATED UNDER 29 USC 216(B),** | |
| *Plaintiff*, | **Civil Action No. 5:20-cv-1420** |
| **v.** | |
| **CARENET – INFOMEDIA GROUP, INC., d/b/a CARENET HEALTHCARE SERVICES,** | |
| *Defendant*. | |

## COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, YVONNE GABEL, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective/Class Action Complaint against Defendant, CARENET – INFOMEDIA GROUP, INC. d/b/a CARENET HEATHCARE SERVICES, and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, YVONNE GABEL (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, CARENET – INFOMEDIA GROUP, INC. d/b/a CARENET HEALTHCARE SERVICES (hereinafter referred to as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law, §§ 820 ILCS 105/1 *et. seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, §§ 820 ILCS 115/1 *et seq.* ("IWPCA"), and common law.

2.      Defendant claims to be "the industry's premier engagement and telehealth partner," which provides virtual health care services to individuals across the country.   *See*, https://carenethealthcare.com/ (last visited 12/2/20).

3.      Plaintiff and similarly situated employees worked as "TeleNurses" for Defendant in an at-home call center setting from their home offices.  As TeleNurses, they provided over the phone healthcare services to Defendant's patients.

4.      According to Defendant's website, "[m]ore than 250 of the nation's premier health plans, healthcare organizations and Fortune 500 companies already trust Carenet Health as an extension of their organizations, connecting with consumers and patients on their behalf."  *Id*.

5.      Defendant's website contains the following job description for TeleNurses:

Carenet Healthcare Services is seeking an RN Clinical Care Advisor to join our team of talented professionals who provide telehealth and virtual care clinical triage assessments, health education and other services to diverse populations of patients and health plan members.

At Carenet Health, our nurses play an important role in helping healthcare consumers live their healthiest lives. You may not know our name, but odds are, our nurses or clinical staff have connected with you or someone you know as a trusted, behind-the-scenes partner for our clients—250+ of the nation's premier health plans, health systems and their partners.

About 50,000 times a day, our compassion-focused teams guide people via phone, video, chat and other channels to high-quality and cost-effective care, coach them to improved wellness, and educate them about their healthcare resources and costs.

Our nurses and clinical staff supports patients across the U.S. and around the world. Our fast-paced positions offer innovative work-at-home capabilities, plus the opportunity to keep your clinical skills sharp and have meaningful interactions with patients in a less physically demanding setting than a traditional clinical environment.

***Exhibit A***, Exemplary Job Description.

6.      Defendant employs TeleNurses across the country and requires them to work a set schedule.

7.      Defendant systematically fails to compensate the TeleNurses for the first principal activities of their workday, which results in TeleNurses not being paid for all their overtime hours, and in non-overtime workweeks, for regular hours, in violation of the FLSA, IMWL, IWPCA, and common law.

8.      Specifically, Defendant fails to compensate TeleNurses for the substantial time spent booting up their computer systems and reviewing emails with work instructions, prior to clocking in to Defendant's timekeeping system.

9.      Defendant was aware this off-the-clock work was occurring every day, and could have paid TeleNurses for this time, but did not.

10.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.  One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2.

11.     In order to perform her job as a TeleNurse, Plaintiff was required to start-up and log-in to various computer programs, servers, and applications in order to access the information necessary to perform her job duties. In addition, Plaintiff was required to read e-mails from Defendant (management) at the beginning of her shift with various work instructions for each day. The start-up/log-in process took substantial time on a daily basis with said time ranging from eight (8) to fifteen (15) minutes per day.

12.     Plaintiff and other TeleNurses were provided with a one thirty (30) minute lunch during each shift.  However, many of the programs utilized by TeleNurses had an auto-log out

feature, which logged the TeleNurses out if they were idle for more than a few minutes.  For example, the TeleNurses were kicked out of the VPN and out of the timekeeping system if they were idle for more than a few minutes. Additionally, TeleNurses were required to log out of other programs for security reasons.  Consequently, Plaintiff and other TeleNurses were forced to go through some, or all, of the start-up/log-in process when returning from lunch.  This generally resulted in an additional two (2) to three (3) minutes of off-the-clock work every day, but could take even longer if they had to go through the complete log-in process.

13.     Finally, at the end of the day, TeleNurses are forced to shut-down/log-out of various computer programs and software after they clock out for the day.  This results in an additional three (3) to four (4) minutes of off the clock work every day.

14.     As a result, Plaintiff and other TeleNurses were unlawfully deprived of approximately thirteen (13) to twenty two (22) minutes of compensation for the off the clock work that occurred every day.

15.     Defendant knew, or could have easily determined, how long it took for all of the above off the clock work, and could have properly compensated Plaintiff and the other TeleNurses for the work they performed off the clock, but did not.

16.     Plaintiff brings this action on behalf of herself and all other similarly situated hourly TeleNurses of Defendant to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

18.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

19.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's Representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

20.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts as their federal claims.

21.     This court has personal jurisdiction over Defendant because it regularly and systematically conducts business within this judicial district and is headquartered in this district.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is headquartered in this district.

## PARTIES

23.      At all relevant times, Plaintiff was a resident of McHenry, Illinois, and was employed by Defendant as a TeleNurse from her home office.  Defendant has employed Plaintiff as a TeleNurse from December 2018 to the present.  Plaintiff signed a consent to join form to join this lawsuit, which is attached hereto as ***Exhibit B***.

24.      Defendant is a Texas corporation, doing business in Illinois, but headquartered at 11845 Interstate 10 W, San Antonio, Texas 78230.

## GENERAL ALLEGATIONS

25.      Defendant employed Plaintiff as a TeleNurse from her home office in McHenry, Illinois.  Defendant has employed her in this position from December 2018 to the present and at all times has paid her at a regular hourly rate, most recently at a rate of $36.38.

26.     The position description describes the "typical week" for a TeleNurse as providing patient-focused care and guidance on the phone or online; communicating with Defendant's clients and other team members verbally and digitally; monitoring performance with dashboard metrics; participation in coaching sessions; and documenting all patient/member interactions via management software. ***Exhibit A***.

27.     Throughout her employment with Defendant, Plaintiff regularly worked off the clock as part of her job as a TeleNurse.

28.     In order to perform her job, Plaintiff was required to start-up and login to various computer programs, applications, and servers off the clock in order to access the information necessary to perform her job duties.  Plaintiff was also required read emails off the clock with work instructions to perform her job duties.

29.     At all relevant times, Defendant paid Plaintiff and all other TeleNurses an hourly wage and classified them as nonexempt employees.

30.     The off the clock work performed by TeleNurses before every shift starting up and logging into computer programs and reading emails with work instructions were work activities that directly benefitted Defendant and were integral and indispensable to the TeleNurses' ability to perform their job duties.

31.     Similarly, the off the clock work tasks that the TeleNurses performed when returning from their lunch breaks starting up and logging back into computer programs directly benefitted Defendant and were integral and indispensable to the TeleNurses' ability to perform their job duties.

32.     Likewise, the off the clock work tasks that the TeleNurses performed  after clocking out, namely, shutting down and logging out of their computer programs, directly

benefitted Defendant were integral and indispensable to the TeleNurses' ability to perform their job duties.

33.     All TeleNurses used the same or similar essential computer programs, applications, and servers in performing their job duties.  These computer programs, applications, and servers are integral and indispensable part of the TeleNurse's work and they cannot perform their jobs without them.

34.     After powering up their computers, and before clocking in, Plaintiff and all other TeleNurses were required to open, load, and log into the following programs, applications, and servers: Microsoft Windows, Vidyo, Skype, Microsoft Outlook, Softphone, and Verint.  These are examples of the programs, applications, and servers TeleNurses were required to access before clocking in and not an exhaustive list.

35.     On average, Defendant's TeleNurses spent 8-15 minutes working off the clock at the start of their scheduled shift accessing computer systems and reading work emails.

36.     Similarly, TeleNurses spent an additional 2-3 minutes working of the clock to log back into those computer systems after returning from lunch.

37.     At the end of the day, TeleNurses spent an additional 3-4 minutes logging out of computer systems after clocking out of Defendant's timekeeping system.

38.     Despite its ability to track the amount of time Plaintiff and other TeleNurses spend in connection with the pre-shift boot-up and login process, the mid-shift boot-up and log-in process, and the post-shift shutdown and logout process, Defendant failed to pay Plaintiff and other TeleNurses for the off the clock work they performed each shift.

39.     Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

**Defendant Directed TeleNurses to Work Off the Clock and Directly Benefitted from the Off the Clock Work**

40.      At all relevant times, Defendant required and directly benefitted from the off the clock work performed by Plaintiff and all other TeleNurses in connection with the pre-, mid-, and post-shift activities described above.

41.      At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other TeleNurses.

42.      At all relevant times, Defendant was able to track the amount of time Plaintiff and other TeleNurses spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other TeleNurses for the off the clock work they performed.

43.      At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the CSRs in order to pressure them into performing pre-, mid-, and post-shift work, off the clock.

44.      Defendant instructed TeleNurses to have all work applications and systems fully loaded before they clocked-in, so that they were prepared to take calls the moment they clocked-in.  The same policy applied when returning from unpaid lunch breaks.  Similarly, at the end of the shift, Defendant instructed TeleNurses to clock out before closing all work applications and systems to make certain they were clocked out at the moment they stopped taking calls.

45.      TeleNurses were subject to discipline if their "AUX time" was too high.  AUX time refers to time the TeleNurses spent clocked-in, but unavailable to take calls.  In order to reduce AUX time, Defendant instructed TeleNurses to perform the boot up and shutdown work described herein off the clock.

**Unlawful Deprivation of Wages from TeleNurses**

46.     During the workweeks that Plaintiff and other TeleNurses did not work over forty hours (40) in a workweek, the outcome of Defendant's policies and practices is a depravation of straight time wages – often referred to as a "gap time" claim.  As discussed below, gap time is compensable.

47.     Unpaid straight time wages (for Plaintiff's gap time claims) related to the off the clock work described herein is owed to TeleNurses at the rate which they were typically paid for hours worked up to forty (40) hours in a workweek.

48.     During the workweeks that TeleNurses worked over forty hours (40) in a workweek, the outcome of Defendant's policies and practices is a depravation of overtime wages, which are compensable under the FLSA and applicable state wage and hour laws.

49.     Unpaid wages related to the off the clock work described herein is owed to TeleNurses at the FLSA mandated overtime premium of one and one-half their regular hourly rate in weeks they worked in excess of forty (40) hours in a workweek

50.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks the TeleNurses worked over forty hours and exactly which weeks they worked under forty hours.

**Plaintiff's Exemplary Workweeks**

51.     Defendant pays TeleNurses on a bi-weekly basis.  As an example of one particular workweek where Defendant failed to pay Plaintiff overtime for hours worked in excess of 40 hours (as mandated by the FLSA), during the pay period of December 16, 2018 to December 29, 2018:

> ➢ Plaintiff was paid for 40 hours of regular time and 0.57 hours of overtime, meaning in one of the two weeks Defendant documented her working over 40 hours.  *See **Exhibit C**.*

> ➢ With pre-, mid -, and post-shift time of approximately 13 to 22 minutes per shift, Plaintiff should have been paid an additional

approximately 65 to 110 minutes of overtime compensation for the particular workweek she worked over 40 hours.

52.    As another example of one particular workweek where Defendant failed to pay Plaintiff overtime for hours worked in excess of 40 hours (as mandated by the FLSA), during the pay period of January 6, 2019 to January 19, 2019:

> Plaintiff was paid for 80 hours of regular time and 1.24 hours of overtime, meaning in one or both of the two weeks Defendant documented her working over 40 hours. *See Exhibit C*.

> With pre- and mid-shift time of approximately 13 to 22 minutes per shift, Plaintiff should have been paid an additional approximately 65 to 110 minutes of overtime compensation for the both workweeks during this pay period.

53.    As an example of one particular workweek where Defendant failed to pay Plaintiff regular wages for all hours worked, during the pay period of July 7, 2019 to July 20, 2019:

> Plaintiff was paid for 66.91 hours of regular time and no overtime, meaning Defendant did not document her working over 40 hours. *See Exhibit C*.

> With pre- and mid-shift time of approximately 13 to 22 minutes per shift, Plaintiff should have been paid an additional approximately 65 to 110 minutes of compensation at her regular hourly rate for both workweeks in this period.

## COLLECTIVE ACTION ALLEGATIONS

54.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly TeleNurses who worked for Defendant in the United States, at any time during the last three years.*

(hereinafter referred to as the "putative collective members"). Plaintiff reserves the right to amend this definition as necessary.

55.    Plaintiff's FLSA claim should proceed as a collective action because Plaintiff and

putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

56.    Plaintiff and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

57.    The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend in connection with performing pre-shift and lunch break activities is compensable under the FLSA.

58.    Plaintiff estimates that the putative collective members, including both current and former employees over the relevant period, will include several hundred members. The precise number of putative collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All similarly situated current and former hourly TeleNurses who worked for Defendant in Illinois at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Illinois Class").  Plaintiff reserves the right to amend this definition as necessary.

60.    The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical.  Plaintiff reasonably estimates that there are hundreds of Rule 23 Illinois Class members.  Rule 23 Illinois Class members should be

easy to identify from Defendant's computer systems and electronic payroll and personnel records.

61.     There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class.   These common legal and factual questions include, but are not limited to, the following:

a.   Whether the pre-shift time Rule 23 Illinois Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

b.   Whether the off the clock work performed by the Rule 23 Illinois Class after returning from lunch is compensable;

c.   Whether the off the clock work performed by the Rule 23 Illinois Class after they clock out is compensable; and

d.   Whether Rule 23 Illinois Class members are owed wages for time spent performing pre-shift activities, and if so, the appropriate amount thereof.

62.     Plaintiff's claims are typical of those of the Rule 23 Illinois Class in that she and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

63.     Plaintiff will fully and adequately protect the interests of the Rule 23 Illinois Class and she has retained counsel who are qualified and experienced in the prosecution of Illinois wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23

Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

65.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

66.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

67.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All similarly situated current and former hourly TeleNurses who worked for Defendant in the United States, at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiff reserves the right to amend this definition as necessary.

69.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.  Plaintiff reasonably

estimates there are hundreds of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

70.     There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.     Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

b.     Whether the time that Rule 23 Nationwide Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

c.     Whether the time that the Rule 23 Nationwide Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

d.     Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

71.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

72.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide

Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

74.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

75.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

76.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(FLSA Collective Action)**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.***

77.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further

alleges as follows.

78.    At all times relevant to this action, Defendant was Plaintiff's employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

79.    Defendant engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

80.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

81.    Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

82.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

83.    At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former putative collective members to perform at least eight (8) to fifteen (15) minutes of pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

84.    At all times relevant to this action, Defendant failed to compensate Plaintiff and all similarly situated current and former putative collective members for at least two (2) to three (3) minutes of off-the-clock, unpaid work activities they performed during their lunch breaks.

85.    At all times relevant to this action, Defendant failed to compensate Plaintiff and all similarly situated current and former putative collective members for at least three (3) to four (4) minutes of off-the-clock, unpaid work activities they performed after clocking out of Defendant's

timekeeping system at the end of their shifts.

86.     The off-the-clock work performed by Plaintiff and all similarly situated putative collective members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

87.     In workweeks where Plaintiff and other putative collective members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

88.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took TeleNurses to perform the off the clock pre-shift, mid-shift and post-shift work activities, and Defendant could have properly compensated Plaintiff and the members of the Collective for the work they performed, but did not.

89.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Illinois Class Action)**
**VIOLATIONS OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT,**
**§§ 820 ILCS 115/1 *et seq*.**

90.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

91.     At all times relevant to the action, Defendant was an employer covered by the mandates of the Illinois Wage Payment and Collection Act, and Plaintiff and the Rule 23 Illinois Class are employees entitled to the IWPCA's protections.

92.     The Illinois Wage Payment and Collection Act, §§ 820 ILCS 115/1 *et seq.* requires that "[a]ll wages earned by any employee … shall be paid." 820 ILCS 115/4.

93.      Under 820 ILCS 115/14(a), an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

94.     Defendant violated the IWPCA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

95.     As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IWPCA at an amount to be proven at trial.

### COUNT III
### (Rule 23 Illinois Class Action)
### VIOLATIONS OF THE ILLINOIS MINIMUM WAGE LAW,
### §§ 820 ILCS 105/1 *et. seq*.

96.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

97.     At all times relevant to the action, Defendant was an employer covered by the mandates of the Illinois Minimum Wage Law, and Plaintiff and the Rule 23 Illinois Class are employees entitled to the IMWL's protections.

98.     The Illinois Minimum Wage Law, §§ 820 ILCS 105/1 *et. seq.* requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* § 820 ILCS 105/4; 820 ILCS 105/4a.

99.     820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid."

100.    On February 19, 2019, the IMWL was amended to provide for 5% interest (as oppose to 2%) and treble damages.

101.    Defendant violated the IMWL by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

102.    As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, treble damages (post February 2019), interest, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

### COUNT IV
### (Rule 23 Nationwide Class Action)
### BREACH OF CONTRACT

120.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

121.    At all times relevant to this action, Defendant had a binding and valid contract with

Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendant's behalf.

122.    Defendant's contractual promises to pay Plaintiff and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things each pay stub issued to Plaintiff and the Rule 23 Nationwide Class members.

123.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, has an hourly rate of between $14.00 and $19.00 per hour.

124.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

125.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

126.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent doing pre-, mid-, and post-shift work activities, which is a fundamental part of an employer's job.

127.    Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

103.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and every other member of the Rule 23 Nationwide Class have been damaged in an amount to be determined at trial.

## COUNT V
### (Rule 23 Nationwide Class Action)
### UNJUST ENRICHMENT

104.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

105.    This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

106.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

107.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

108.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

109.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

110.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived

therefrom.

111.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

112.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

113.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

114.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, YVONNE GABEL, requests the following relief:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    Certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Counts II and III);

c.    Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Counts IV and V);

d.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all putative Collective action members and the Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is

reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.   Designating Plaintiff as the representative of the FLSA Collective action, the Rule 23 Illinois Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class/Collective counsel for the same;

f.   Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.   Declaring Defendant's violation of the FLSA was willful;

h.   Declaring Defendant violated the IMWL and that said violations were intentional, willfully oppressive, fraudulent and malicious;

i.   Declaring Defendant violated IWPCA and that said violations were intentional, willfully oppressive, fraudulent and malicious;

j.   Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

k.   Declaring Defendant was unjustly enriched through their failure to pay Plaintiff and the Rule 23 Nationwide Class for the off the clock work discussed herein;

l.   Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the Collective action members, the Rule 23 Illinois Class, and the Rule 23 Nationwide Class, the full amount of damages, liquidated damages, and treble damages (where applicable) available by law;

m.   Awarding interest at the applicable rates, as permitted by the IMWL;

n.   Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

o.   Awarding pre- and post-judgment interest to Plaintiff on these damages; and

p.   Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, YVONNE GABEL, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules

of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:  December 13, 2020

      Respectfully submitted,

                _/s/ *Jack Siegel*_____
                **JACK SIEGEL**
                *Co-Attorney in Charge*
                Texas Bar No. 24070621
                Siegel Law Group PLLC
                4925 Greenville, Suite 600
                Dallas, Texas 75206
                214.790.4454
                www.4overtimelawyer.com

                **TRAVIS M. HEDGPETH**
                Texas Bar No. 24074386
                **THE HEDGPETH LAW FIRM, PC**
                3050 Post Oak Blvd., Suite 510
                Houston, Texas 77056
                Telephone: (281) 572-0727
                Facsimile: (281) 572-0728
                travis@hedgpethlaw.com

                Charles R. Ash, IV (P73877)
                Kevin J. Stoops (*pro hac vice* forthcoming)
                Alana Karbal (P82908)
                SOMMERS SCHWARTZ, P.C.
                One Towne Square, 17th Floor
                Southfield, Michigan 48076
                Phone: (248) 355-0300
                crash@sommerspc.com
                kstoops@sommerspc.com
                akarbal@sommerspc.com

                **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing document will be served on Defendant with a copy of the Summons that will be issued by the Court.

_/s/ Jack Siegel
JACK SIEGEL