UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**YVONNE GABEL**, individually,
and on behalf of others similarly situated,                    Case No. 5:20-cv-01420-JKP

                Plaintiff,

vs.

**CARENET – INFOMEDIA GROUP, INC.,**
**d/b/a CARENET HEALTHCARE**
**SERVICES**

                Defendant.

---

**PLAINTIFF'S UNNOPPOSED MOTION FOR "FINAL APPROVAL" OF THE CLASS
ACTION SETTLEMENT AND OTHER RELATED RELIEF**

      As reflected in the previously filed "Class/Collective Action Settlement Agreement," *see* ECF No. 33-1 at 65 and Exhibit A to the Memorandum of Law in Support of this Motion, the parties have agreed to settle this lawsuit on behalf of the putative class/collective members for $618,500.00.  As discussed herein, approval of the settlement is warranted under 29 U.S.C. 216(b) of the FLSA and Fed. R. Civ. P. 23.

      On September 14, 2021, the Court granted preliminary approval of the parties' settlement, and on October 29, 2021 the Settlement Administrator mailed the court-approved Notice Packets to the Class Members. The response from the Class Members has been overwhelmingly positive. Of the seven hundred sixty four (764) Notice Packets mailed, just five (5) Class Members have requested to be excluded and zero (0) Class Members have objected to the settlement.

      As explained in the Preliminary Approval Memorandum (ECF No. 33-1), the Motion and Memorandum for Approval of Class Counsel's Fees and Costs and Class Representative Service Awards (ECF No. 38), and the attached Memorandum in Support of Final Approval, the parties'

settlement represents an outstanding recovery for the Class Members.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant this motion and enter the accompanying proposed order.

Respectfully submitted,

Dated:  January 20, 2022

/s Charles R. Ash, IV
Charles R. Ash, IV (*pro hac vice*)
Kevin J. Stoops (*pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
crash@sommerspc.com
kstoops@sommerspc.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, thereby serving all counsel of record.

/s Charles R. Ash, IV
Charles R. Ash, IV (*pro hac vice*)
Kevin J. Stoops (*pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
crash@sommerspc.com
kstoops@sommerspc.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**YVONNE GABEL**, individually,
and on behalf of others similarly situated,          Case No. 5:20-cv-01420-JKP

                    Plaintiff,

vs.

**CARENET – INFOMEDIA GROUP, INC.,**
**d/b/a CARENET HEALTHCARE**
**SERVICES**

                    Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S UNNOPPOSED MOTION FOR "FINAL APPROVAL"**
**OF THE CLASS ACTION SETTLEMENT AND OTHER RELATED RELIEF**

1

## TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................................iv

I.      INTRODUCTION ...........................................................................................1

II.     PROCEDURAL HISTORY OF THE CASE ...................................................2

        A.      THE PROCEEDINGS, PLEADINGS, AND PARTIES .....................2

        B.      SUMMARY OF DISCOVERY CONDUCTED PRIOR TO
                MEDIATION ...........................................................................................3

        C.      EXTIMATED EXPOSURE.....................................................................6

        D.      TOTAL POTENTIAL LIABILITY AND PERCENTAGE OF
                RECOVERY ............................................................................................6

III.    SETTLEMENT TERMS ..................................................................................7

        A.      VALUE OF THE SETTLEMENT TO THE CLASS.............................7

        B.      SIZE OF THE CLASS AND THE CLASS DEFINITION ..................7

        C.      NATURE OF PAYMENTS AND NOTICE, EXCLUSION,
                OBJECTION PERIODS .......................................................................8

        D.      THE RELEASED CLAIMS AND RELEASED PARTIES................8

        E.      ATTORNEY'S FEES, COSTS, SERVICE AWARD,
                ADMINISTRATION...........................................................................10

        F.      THE NET DISTRIBUTION FUNDS; CALCULATION AND
                PAYMENTS TO CLASS ....................................................................10

        G.      NOTICE PROCEDURES...................................................................12

        H.      TAX CONSEQUENCES AND ALLOCATIONS AND UNCASHED
                CHECKS, CY PRES............................................................................12

IV.     ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL.................12

        A.      THE BEST PRACTICAL NOTICE OF SETTLEMENT HAS BEEN
                PROVIDED .........................................................................................12

B.    FINAL APPROVAL STANDARDS UNDER RULE 23 AND THE FLSA ................................................................................. 13

    1.    No Evidence of Fraud or Collusion Behind the Settlement.................. 14

    2.    The Complexity, Expenses, and Likely Duration of Litigation Favor Settlement ...................................................................... 15

    3.    The Stage of Proceedings and Amount of Discovery Conducted Favor Settlement ...................................................................... 16

    4.    The Probability of Success Favor Settlement ........................................ 16

    5.    The Settlement is Well-Within the Range of Possible Recovery ........... 17

    6.    The Opinions of Class Counsel, Class Representative, and Class Members Favor Settlement .................................................... 18

    7.    The Settlement Satisfies the Requirements for Approval Under the FLSA ................................................................................ 19

C.    THE COURT SHOULDJ GRANT FINAL CERTIFICATION AND COLLECTIVE ACTION DESIGNATION........................................ 19

D.    FINAL APPROVAL OF CLASS COUNSEL'S FEES AND COSTS, AND SERVICE AWARDS................................................................ 20

    1.    Final Approval of Class Counsel's Fees and Costs is Appropriate ........ 20

    2.    The named and Opt-in Plaintiff Service Awards are Reasonable........... 21

    3.    The Administrator and Administration Costs Should be Approved....... 22

E.    FINAL APPROVAL OF CLASS COUNSEL IS APPROPRIATE ................... 23

V.    CONCLUSION........................................................................... 23

## <u>INDEX OF AUTHORITIES</u>

**Federal Cases**

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) .......................................................................... 15, 16

*Campton v. Ignite Rest. Grp., Inc.*,
  No. CV 4:12-2196, 2015 WL 12766537 (S.D. Tex. June 5, 2015) .......................................... 21

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .................................................................... 13, 18, 19

*Dehoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ...................................................................... 13, 14

*DeHoyos*,
  240 F.R.D. ............................................................................................... 18

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ..................................................................................... 13

*Hill v. Hill Bros. Constr. Co., Inc.*,
  No. 3:14-CV-213-SA-RP, 2018 WL 280537 (N.D. Miss. Jan. 3, 2018)................................... 20

*In re  Antitrust Litig.*,
  939 F.Supp. 493 (ND Miss, 1996)......................................................................... 22

*In re Educ. Testing Serv. Praxis Principles of Learning and Teaching: Grades 7-12 Litig.*,
  447 F.Supp.2d 612 (E.D. La. 2006)....................................................................... 16

*In re EZCORP, Inc. Sec. Litig.*,
  No. 1:15-CV-00608-SS, 2019 WL 6649017 (W.D. Tex. Dec. 6, 2019) .................................. 21

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012).................................................................... 15

*Jenkins v. Trustmark Nat. Bank*,
  300 F.R.D. 291 (S.D. Miss. 2014)......................................................................... 22

*Jones v. Singing River Health Servs. Found.*,
  865 F.3d 285 (5th Cir. 2017) .......................................................................... 14, 15

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) .................................................................... 13

*Leonard v. Baumer (In re United Energy Corp. Sec. Litig.)*,
    1989 WL 73211 (C.D. Cal. March 9, 1989) ........................................................... 21

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ........................................................................... 14

*Matson v. NIBCO Inc.*,
    2021 WL 4895915 (W.D. Tex. Oct. 20, 2021) ....................................................... 15

*McClain v. Lufkin Indus., Inc.*,
    2010 WL 455351 (E.D.Tex. Jan. 15, 2010) .......................................................... 22

*Miller v. Glob. Geophysical Servs., Inc.*,
    No. 14-CV-0708, 2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) ............................ 21

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................................. 13

*Neff v. VIA Metro. Transit Auth.*,
    179 F.R.D. 185 (W.D. Tex. 1998) ......................................................................... 17

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................... 13

*Pettway v. Am. Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978) ............................................................................. 19

*Phillips Petrol. Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................. 13

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ................................................................... 14, 16, 17

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F.Supp.2d 942 (E.D.Tex.2000) ........................................................................ 22

*United States v. Allegheny-Ludlum Industries, Inc.*,
    517 F.2d 826 (5th Cir. 1975) ............................................................................... 13

*Welsh v. Navy Fed. Credit Union*,
    No. 5:16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .......... 17, 18

**Federal Statutes**

29 U.S.C. § 201 ......................................................................................................... 2, 9

29 U.S.C. § 216(b) ........................................................................................................ 3

**Federal Rules**

Fed. R. Civ. P. 23(e)(2) ............................................................................................... 13

Fed. R. Civ. P. 23(g)(3) .............................................................................................. 23

Rule 23 of the Federal Rules of Civil Procedure ................................................. passim

Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure .................................... 19

# I.    INTRODUCTION

Yvonne Gabel ("Plaintiff") and Carenet – Infomedia Group, Inc., d/b/a Carenet Healthcare Services ("Defendant") have agreed to settle this "hybrid" class/collective action lawsuit.  On September 14, 2021, the Court granted preliminary approval of the parties' settlement. Doc. 35, Preliminary Approval Order.  In the lawsuit, Plaintiff sought to recover unpaid wages on behalf of Plaintiff and all other hourly Tele Nurses employed by Defendant.  The preliminarily approved settlement requires Defendant to make a non-reversionary payment of $618,500.00.  If final approval is granted, the non-reversionary settlement fund of $618,500.00, will be distributed as follows: (i) $362,583.34 will be paid to the 764 putative class/collective members; (ii) $20,000 in service awards will be paid to the Named Plaintiff and initial opt-in Plaintiffs that assisted Plaintiff in preparing this case; (iii) 206,166.66 will be paid to Sommers Schwartz, P.C. ("S2"), Siegel Law Group, PLLC, and The Hedgepeth Law Firm, PC (together "class counsel") for attorney fees; (iv) litigation costs in an amount not to exceed $14,000 to class counsel; and (v) fees to the settlement administrator in an amount not to exceed $15,750.[1] (*See*, *Exhibit 1*, Settlement Agreement.)

Filed in support of this Motion is the Joint Stipulation of Class Action Settlement (hereafter "Settlement") (*Exhibit 1*), the declaration of Plaintiff's Counsel, Kevin Stoops (*Exhibit 2*), and the declaration of the Settlement Administrator (Meagan Brunner).  The Settlement defines the Class Members as follows: all current and former hourly Tele Nurses who worked for Defendant in the United States from December 13, 2017 through preliminary approval or September 30, 2021, whichever comes earliest (the "Class Period"). In total, this class definition encompassed seven hundred sixty four (764) Tele Nurses.

---

[1] As discussed below, the third-party Settlement Administrator's costs ran slightly over budget, but the litigation costs preliminarily approved were less than anticipated, so the overage to the Settlement Administrator's cost was completely offset and the Net Settlement Fund to the Class Members will be larger than the amount preliminarily approved ($362,333.34).

On October 29, 2021, the Settlement Administrator mailed the court-approved Notice Packet the 764 Tele Nurses. The response to the settlement Notice Packet was exceedingly positive, as zero (0) Class Members objected and just five (5) requested to be excluded. With the objection and opt-out period closed, and having provided notice to all interested parties and non-parties (e.g. CAFA notice), Plaintiff now seeks an order of final approval.

In connection with requesting final settlement approval, Plaintiff also requests that the Court confirm and approve as final: (1) certification of the Settlement Class and FLSA Collective under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and 29 U.S.C. § 201 et seq., both of which were certified in the Court's Preliminary Approval Order; (2) final appointment of Plaintiff Gabel and Opt-in Plaintiffs Lake, Maravilla, Schaaf, and Van Thiel, as the representatives ("Class Representatives") for the Class Members, and Class Counsel as counsel for the Class Members; (3) Class Counsel's fees and litigation expenses; (4) the incentive awards for the Class Representatives; and (5) the expenses paid to the third-party Settlement Administrator.

## II.    PROCEDURAL HISTORY OF THE CASE

### A.    The Proceedings, Pleadings, and Parties

Plaintiff filed this case on December 13, 2020 asserting the following claims:

Count I:        Violation of the FLSA, 29 U.S.C. § 201, *et seq*. (Collective Action under the Fair Labor Standards Act)

Count II:       Violation of the Illinois Wage Payment and Collection Act, §§ 820 ILCS 115/1 *et seq*.

Count III:      Violation of the Illinois Minimum Wage Law, §§ 820 ILCS 105/1 *et. seq*.

Count IV:      Breach of Contract

Count V:       Unjust Enrichment

Doc. 1, Plaintiff's Complaint.

On January 26, 2021, Plaintiff filed her Pre-Discovery Motion for Conditional Certification, pursuant to 29 U.S.C. § 216(b). Defendant subsequently filed its Answer and Affirmative Defenses on March 16, 2021. Doc. 18.  Shortly thereafter, the parties met and conferred regarding several aspects of the litigation, including the possibility of an early mediation accompanied by a voluntary exchange of data and information.  Part-and-parcel with those conversations, were discussions concerning delaying argument/ruling on the Motion for Conditional Certification and tolling the applicable statutes of limitations for the putative class. Additionally, the parties discussed the parameters of a mutual voluntary production (including an extensive data production for Class Members timekeeping and pay records) prior to mediation.

The parties then scheduled and conducted a mediation with well-respected and nationally known wage and hour mediator, Steven Pearl, Esq.  That mediation was scheduled and occurred over an entire day on June 30, 2021.  After a full day of mediation, the parties were able to reach an agreement in principal.  The parties spent the next several weeks memorializing the terms of their agreement in a binding term sheet and (after) a long-form settlement agreement.  At all times, the parties' settlement negotiations have been non-collusive, adversarial and at arm's length.

On July 7, 2021, the parties filed a Notice of Conditional Statement advising the Court that the parties had reached a settlement conditioned up the Court's approval.  Doc. 29.

### B.    Summary of Discovery Conducted Prior to Mediation

Plaintiff's Counsel based the Complaint upon substantial pre-filing research, both factual and legal.  Additionally, Defendant produced hundreds of pages of documents in addition to substantial electronic data documents (excel spreadsheets) responsive to Plaintiff's informal pre-mediation discovery requests.  The parties' counsel conducted numerous phone conferences and exchanged extensive correspondence on Plaintiff's claims, Defendants' defenses, and the scope of

discovery. The documents and data provided and reviewed by Class Counsel included the following:

- Payroll data for the entire class consisting of work weeks, shifts, hourly rates, and job locations;

- Job descriptions;

- Offer letters;

- Paystubs;

- Employee Payroll summaries;

- Email correspondence from supervisors;

- Training and Orientation materials;

- Performance Reviews;

- Several versions of Defendant's Employee Handbook;

- Written Attendance and Schedule Adherence Policies; and

- Policies regarding the operation of Tele Nurse computer systems.

Based on Plaintiff Counsel's review of these documents, and with the help of Plaintiff's damage expert Eric Lietzow, CPA/ABV, the following metrics were ascertained based on the timekeeping and pay records exchanged prior to mediation:

- 714 Class Members;

- 439 Class Members' employment terminated as of the mediation;

- Average hourly rate of $27.65;

- 36,399 workweeks during the Class Period;

- Overtime was worked in approximately 17.7% of the workweeks; and

- 145,183 total shifts during the Class Period.

*See*, *Exhibit 2*, Stoops Decl. at ¶ 37.

Accordingly, based on the data supplied by Defendant, Plaintiff believes there are approximately 6,442.62 possible workweeks in which the Plaintiff and the putative class members could have sustained overtime damages under the FLSA.

Throughout the litigation, and in connection with the mediation process, Defendant asserted numerous legal and factual defenses to Plaintiff's claims and class certification efforts[2], including, among others, that:

- The off-the-clock work asserted in the Complaint was *de minimis*;

- The off-the-clock work was otherwise not compensable;

- Plaintiff's claims are not suitable for class/collective treatment; and

- If the work was compensable, it took far less time than alleged by Plaintiff.

The existence of Defendant's factual and legal arguments weighed on the parties' decision to resolve the case. While Class Counsel takes issue with the viability of some of these defenses, the risks associated with the continued litigation of Plaintiff's wage claims simply cannot be disregarded in measuring the reasonableness of the settlement. Specifically, settling this case now saves the parties from years of litigation and tremendous uncertainty as to the ultimate outcome of the litigation. Should the parties have continued to litigate the case, they would have been faced with no less than 6 to 12 months of additional formal discovery (*e.g.* individual class member depositions; interrogatories and requests for production of documents; electronic data production; and Rule 30(b)(6) depositions). Discovery, once completed, would likely be followed by individual Rule 23 certification motions on the Class Members' state law claims, FLSA conditional certification and decertification motions, numerous dispositive motions, and

---

[2] Defendant raised fifty (50) affirmative defenses in their answer.

eventually one or more trials.  It is very likely that this litigation would extend for another two to three years and cost the parties $500,000 to $1,000,000 (or more) each in attorneys' fees and expenses.

### C.    Estimated Exposure

The parties reached their Settlement only after evaluating Plaintiff's theories of potential exposure for the underlying claims, and, with the assistance of the mediator, considering discounts to potential liability in light of Defendant's contentions and defenses.  In their declarations, Plaintiff and the Opt-in Plaintiff's estimated a maximum of twelve (12) to twenty (22) minutes of off-the-clock work per day.  Defendant insists these estimations are grossly inflated. Nonetheless, Plaintiff's Counsel developed a time consuming and complicated damage analysis of all claims and calculated the maximum potential exposure that Plaintiff contends Defendants faced on the claims as follows:

- **Off-the-Clock Overtime Wage Damages:**

Assuming fifteen (15) minutes of off the clock work every day (the mid-point of Plaintiff's estimation), Defendant owes the Class Members approximately $269,509.45. *Exhibit 2* at ¶ 38.

- **Off-the-Clock Straight Time Damages:**

Again, assuming fifteen (15) minutes of off the clock work every day, and also assuming every state has a law permits for recovery of straight time wages (the FLSA only protects overtime and minimum wages), then the maximum straight time damages for the Class Members are $827,850.52. *Id*.

### D.    Total Potential Liability and Percentage of Recovery

Based on the damage analysis conducted by Plaintiff's Counsel and their damages expert, and in light of the factual and legal defenses identified above, the $618,500.00 settlement equates

to approximately 56% of Defendant's $1,097,359.97 total off-the-clock straight time and overtime damage exposure based on fifteen (15) minutes of off the clock work per day. *Id.* ¶40. The settlement is substantial, completely reasonable, and marks a fair compromise of the claims.

### III.     SETTLEMENT TERMS

**The parties' settlement provides as follows:**

### A.     Value of the Settlement to the Class

Defendant has agreed to pay a Gross Settlement Fund of $618,500.00 in connection with this non-reversionary settlement. This amount will cover Class Counsel's attorney fees, litigation and settlement administration expenses, and incentive awards for the class representatives.

Plaintiff, the Opt-In Plaintiffs and Class Counsel recognize the expense and length of continued proceedings necessary to litigate their disputes through trial and through any possible appeals.  They have also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.  Based on the foregoing, and the various hurdles in establishing liability, the Settlement attached hereto is fair, adequate and reasonable, and is in the best interests of the Settlement Class Members.  *Exhibit 1*, ¶ 34.

### B.     Size of the Class and the Class Definition

The Settlement Agreement defines Class Members as "all current and former hourly Tele Nurses who worked for Defendant in the United States at any time from December 13, 2017 through August 29, 2021 or the date of Preliminary Approval of Class Action Settlement, whichever date comes earliest.  *Exhibit 1*, ¶ 6.  Based on this definition, the final Class size was 764 individuals.[3] *Exhibit 3*, Settlement Administrator Declaration, ¶ 9. The Settlement Administrator was able to locate a valid address for all but five (5) Class Members. *Id*. ¶ 10.

---

[3] This number is slightly higher than the estimation that was provided in the preliminary approval briefing (714), due Class Members who joined the case after the mediation data was provided.

**C.      Nature of Payments and Notice, Exclusion, and Opportunity to Object**

This is a common fund settlement with no reversion, and every participating class member will automatically be sent a check for their Individual Settlement Payment. *Exhibit 1*, ¶ 15. The objective formula for determining the Individual Settlement Payment is discussed below in Sub-Section F of this Memorandum. *See also*, *Exhibit* 1 at ¶ 41(b).  Additionally, Class Members were advised that, by endorsing their checks and depositing them, will opt into the FLSA Settlement Collective and release the FLSA Released Claims. *Id.* at ¶ 42(c).

As stated above, the court-approved Notice Packet was mailed to 764 individuals. *Exhibit 3*, ¶ 9. Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, the Class Members were provided with forty-five (45) days to request exclusion from the Settlement or object. *Exhibit* 1, ¶ 26. *See also*, Doc. 35, Preliminary Approval Order. No Class Member objected to the Settlement and only five (5) requested exclusion from the Settlement. *Exhibit 3*, ¶ 13-14. The Settlement Administrator and Defendant also resolved two (2) disputes. *Id.*, ¶ 12.

Based on the declaration of the Settlement Administrator, the Net Settlement Fund payable to the Class Members will be $361,614.34. Exh. 3, ¶ 15.  The average payment to the Class Members under the parties' Settlement is $476.44. The highest estimated payment is $1,884.62. *Id.*, ¶ 16. Measured against an estimated maximum exposure of $1,097,359.97, the parties' $617,500.00 Settlement he Settlement provides substantial relief to 759 Class Members.

**D.      The Released Claims and Released Parties**

Under the Settlement, the Class Members who do not request exclusion will release Defendants from all "Released Claims," which is defined as:

> all failure to pay wage claims that have been alleged or that could have been alleged in the Action including all of the following claims for relief: (a) that Defendant failed to pay and/or properly calculate all wages due, including the regular rate of pay, straight time, overtime, double-time, premium pay, minimum wages, and all

other forms of wages; (b) that Defendant ailed to provide compliant meal periods and/or proper premium payments in lieu thereof; (c) that Defendant failed to provide compliant rest breaks and/or proper premium payments in lieu thereof; (d) that Defendant failed to maintain required records; (e) that Defendant owes other monies or penalties under the wage and hour laws pleaded in the Action; and (f) that Defendant is responsible for the payment damages, penalties, interest and other amounts recoverable under said causes of action alleged in the Action, including without limitation the following claims based on or reasonably relating to claims asserted or alleged in the action: claims for unpaid wages (including claims for regular wages, overtime, regular rate calculations, gap time, off-the-clock or unpaid time, breaks), under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., state wage and hour laws, and state common law breach of contract theories. The Released Claims also include all claims Plaintiff, Opt-In Plaintiffs and the Settlement Class Members may have against the Released Parties relating to (i) the payment and allocation of attorneys' fees and costs to Class Counsel pursuant to this Agreement and (ii) the payment of the Class Representative Service Award pursuant to this Agreement. The period of the Release shall extend commensurate with that of the Class Period, as defined above.

*Exhibit 1*, at ¶ 23.

Additionally, each Class Member who endorses his or her Individual Settlement Payment check by signing the back of the check and depositing or cashing the check shall release and forever waive any and all claims for violations of the Fair Labor Standards Act. Specifically, each check shall be affixed with the following endorsement:

By cashing this check, you are releasing any and all claims, rights, causes of action and liabilities, whether known or unknown, for any and all types of relief under the Fair Labor Standards Act, including without limitation claims for failure to pay minimum wage, overtime, and for all hours worked, and any and all claims for recovery of compensation, overtime pay, minimum wage, liquidated damages, interest, and/or penalties tied to such claims, that arose or accrued at any time from December 13, 2017 through [Preliminary Approval Date or August 29, 2021], arising from your employment with Carenet—Infomedia Group, Inc. d/b/a Carenet Healthcare Services. Your release does not include, however, any claims, rights, causes of action or liabilities that cannot be released as a matter of law.

*Exhibit 1*, ¶ 42(c).

The Class Notice provides a detailed recitation of the releases under the Agreement, and makes clear the scope of claims being released by the class and collective members.

Plaintiff Gabel and the initial Opt-In Plaintiffs (Lake, Maravilla, Schaaf, and Van Thiel) will also provide a general release, including a release of unknown claims. *Id*. at ¶ 42(d).

### E.    Attorney's Fees, Costs, Service Award, Administration

The Gross Settlement Amount of $618,500 will be used to pay the following:

- Class Counsel's Attorneys' Fees in an amount not to exceed $206,166.66 and Lawsuit Costs in an amount not to exceed $14,000 (any unapproved amounts will pour over to the class members). *Exhibit 1*, Settlement, ¶ 42(e).

- Class Representative Service Awards in the amount of $20,000 total. Specifically, $4,000 to Named Plaintiff Gable and in the amount of $4,000 to Opt-in Plaintiffs Lake, Maravilla, Schaaf, and Van Thiel each. *Id.* at ¶ 41(d).

- Settlement Administrator fees in an amount of $15,750. *Id.* at ¶ 42(f)).

From preliminary approval to final approval, the Settlement Administrator's fees were slightly higher than initially anticipated, but Class Counsel's litigation costs were lower. These minor adjustments resulted in a larger Net Settlement Amount (greater recovery) for the Class Members than was anticipated at the preliminary approval stage. Defendant is aware of these minor adjustments and has no objection.

### F.    The Net Distribution Funds; Calculation and Payments to Class

The Gross Settlement Fund minus the above allocations as approved by the Court is the Net Settlement Amount, which is estimated to be $$362,583.34, and this amount will increase with the addition of any un-awarded portions of the allocations or if the final litigation costs to class Counsel are lower than $14,000.00. *Exhibit 1*, Settlement, ¶ 17. The Net Settlement Amount will be paid in its entirety to the class and collective members who participate in the Settlement. Defendants will pay any employer-side payroll taxes in addition to the $618,500 Gross Settlement Amount. *Id.* at ¶ 15.

"The Settlement Administrator will calculate the total amount that each Settlement Class

Member will receive. The Settlement Administrator will divide the Net Settlement Fund by the total number of pay periods Settlement Class Members were employed ("Pay Period Amount"). The Settlement Administrator will multiply the Pay Period Amount by the total number of pay periods that each Settlement Class Member was employed during the Class Period to arrive at an estimated Individual Settlement Amount." *Id.* at ¶ 41(b).

A portion of the Individual Settlement Amount will be allocated toward resolution of the FLSA Claims. The payment is defined as the FLSA Settlement Payment and shall constitute 17.7 percent of the Individual Settlement Amount for each Class Member, as that percentage reflects the percentage of shifts that involved overtime for the Class Members. *Id.* at ¶42(c). The back of all FLSA Settlement Payment checks will provide that Class Members who endorse their FLSA Settlement Payment check by signing the back of the check and depositing or cashing the check will opt in to the FLSA Release. Those who do not wish to opt in may simply refrain from depositing this sum, and this sum shall then be paid to the Cy Pres beneficiary. *Id.*

All Settlement Class Members will be mailed two (2) settlement checks. The first check will represent Rule 23 claim damages and the second check will be for FLSA overtime damages and penalties. The allocation for the FLSA settlement check will be 17.7% of the Individual Settlement Amount for each Class Member, as that percentage reflects the percentage of shifts that involved overtime for Class Members. Id., ¶ 42(c). The back of all FLSA Settlement Payment checks will inform Class Members that by endorsing and depositing/cashing the FLSA Settlement Payment check they are opting into the FLSA Settlement and are bound by the FLSA Release. Those Class Members who do not wish to opt into the FLSA Settlement may simply refrain from depositing the FLSA Settlement Payment. If the Class Member does not opt-in, then they will not be subject to the FLSA Release. The Cy Pres beneficiary will receive funds not deposited. *Id.*

11

### G.    Notice Procedures

Simpluris, Inc., followed the Settlement Agreement and Preliminary Approval Order's protocols for distributing the Notice of the Settlement to the Class Members by U.S. Mail. *Exhibit 1*, Settlement, ¶ 41(a). The Notice, at *Exhibit 1* to the Settlement, was drafted to efficiently, yet comprehensively, describe the terms of the Settlement. The Settlement Administrator issued the court-approved Notice on October 29, 2021. *Exhibit 3*, ¶ 9. Upon sending the Class Members Notice, the Settlement Administrator established (and continues to maintain) a toll-free phone number that allows Class Members to call with questions or concerns. *Id*., ¶ 11. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the administration process. *Id*. Callers have the option to speak with a live call center representative during normal business hours or to leave a message during non-business hours and receive a return call during normal business hours. *Id*. The toll-free telephone number was set forth in the Notice Packet sent to the Class Members. *Id*.

### H.    Tax Consequences and Allocations and Uncashed Checks, Cy Pres

The Settlement Administrator will calculate the Individual Settlement Payments based on the class information provided by Defendants.  *Exhibit 1*, Settlement, ¶ 42. Each Individual Settlement Payment will be allocated 50% to "wages" and 50% to "interest and penalties." *Id.* at ¶ 42(a). Any uncashed proceeds will be paid to the Texas RioGrande Legal Aid. *Id.*.

### IV.    ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL

### A.  The Best Practicable Notice of Settlement Has Been Provided

The mailing of the Notice and corresponding forms to Class/Collective Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class

Members. *See e.g., Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the Agreement, and order its approval, secure in the knowledge that all absent Class/Collective Members have been given the opportunity to participate fully in the opt-in, opt-out, comment, and approval process.

### B. Final Approval Standards Under Rule 23 and the FLSA

"Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), *citing United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975). See also, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is common knowledge that class action suits have a well deserved reputation as being most complex." *Id.* "Thus courts are to adhere to a strong presumption that an arms-length class action settlement is fair – especially when doing so will result in significant economies of judicial resources – absent evidence weighing against approval." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010), *as modified* (June 14, 2010). *See also*, *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) ("As with other class actions, there is a strong presumption in favor of finding the Settlement Agreement fair.").

Class action settlements require court approval as fair, reasonable, and adequate. *See*, Fed.

R. Civ. P. 23(e)(2). As the Fifth Circuit has observed, to determine the appropriateness of a proposed settlement a district court should examine the following:

> (1)     The existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017); *quoting*, *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). "The proposed settlement is not required to achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigations." *Dehoyos* at 286 (internal quotation omitted).

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004) ("*Manual*"), § 21.6 at 309.

Each of the six factors under the Rule 23 Final Approval Standards weighs in favor of settlement approval, and, for the same reasons, also warrants approval under the FLSA.

### 1.   No Evidence of Fraud or Collusion Behind the Settlement

There is absolutely no evidence to suggest that the Settlement was the product of fraud or collusion, in fact, the evidence establishes the opposite – the Settlement was the result of good-faith, arms-length negotiations. In reaching the Settlement, the parties conducted significant (albeit informal) discovery, which involved Defendant producing the payroll and employment data for all Class Members. Based on the data produced by Defendant, Class Counsel, with the assistance of

an expert economist, prepared a comprehensive, detailed and accurate damages model. Armed with this information, the parties attended a private mediation with well-respected wage and hour mediator, Steven Pearl.  After a full-day of mediation, the parties reached a Settlement that provides immediate relief to the entire class and accounts for 56% of Defendant's maximum exposure under Class Counsel's damage analysis (15 minutes per day of off-the-clock work). The first factor for final settlement approval weighs heavily in favor of granting approval. See, *Matson v. NIBCO Inc.,* 2021 WL 4895915, at *9 (W.D. Tex. Oct. 20, 2021) (quoting *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) ("The parties' arms-length negotiations conducted under the close supervision of an experienced mediator are a 'strong indicator of procedural fairness.'"

### 2.  The Complexity, Expense, and Likely Duration of Litigation Favor Settlement

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Matson* at *10 (*quoting In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling now avoids the risks and burdens of potentially protracted litigation.").

As discussed above, hybrid class and collective wage and hour cases are one of the most complicated types of cases. Without the Settlement, the parties would continue to litigate the case, and would be faced with extensive conditional certification briefing, and subsequently, no less than 6 to 12 months of additional formal discovery (*e.g.* individual class member depositions; interrogatories and requests for production of documents; electronic data production; and Rule 30(b)(6) depositions).  Discovery, once completed, would be followed by Rule 23 certification

motions on the Class Members' state law claims, FLSA conditional certification and decertification motions, numerous dispositive motions, and eventually one or more trials. It is very likely that this litigation would extend for another two to three years and cost the parties $500,000 to $1,000,000 (or more) each in attorneys' fees and expenses. The consideration of these facts weighs in favor of approving the parties' Settlement.

**3.  The Stage of Proceedings and Amount of Discovery Conducted Favor Settlement**

"The next factor involves whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Matson* at *10, quoting *Ayers*, 358 F.3d at 369. "Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it." Id., quoting *In re Educ. Testing Serv. Praxis Principles of Learning and Teaching: Grades 7-12 Litig.*, 447 F.Supp.2d 612, 620 (E.D. La. 2006).

Here, the Settlement was reached after Class Counsel obtained all of Class Members' payroll and employment data, and after an expert was retained to assist Class Counsel in analyzing and synthesizing the relevant data. Even if the Settlement were reached after months of formal discovery, the same data and documents would be used to establish the Class Members' damages. The fact that Class Counsel obtained this information expeditiously weighs in favor of settlement.

**4.  The Probability of Success Favor Settlement**

In evaluating the likelihood of success, a district court "must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703

F.2d at 172. At the same time the court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.*

The existence of Defendant's factual and legal arguments weighed on the parties' decision to resolve the case. While Class Counsel takes issue with the viability of some of these defenses, the risks associated with the continued litigation of Plaintiff's wage claims simply cannot be disregarded in measuring the reasonableness of the settlement. As discussed above, the Defendant's answer raised fifty (50) affirmative defenses and argued, among other things, the uncompensated time (if any) was *de minimis*, and, thus, not compensable. Further, to the extent off-the-clock work occurred and it was compensable, Defendant will establish that the time spent booting up/shutting down computers took far less time than alleged. In addition to these defenses, Defendant would maintain the right to challenge treatment of Plaintiff's claims on a class or collective basis. Overall, "continued litigation is unpredictable and the substantial risk to each side as to the ultimate outcome strongly favors settlement." *Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 210 (W.D. Tex. 1998).

### 5. The Settlement is Well-Within the Range of Possible Recovery

The next factor requires the district court to determine "the value of the settlement in light of the potential for recovery." *Matson* at *12, quoting *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *13 (W.D. Tex. Aug. 20, 2018). "But when considering the possible range of recovery, a court should keep in mind that compromise is the essence of settlement. This is because a settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *Id.* (quotations omitted).

In her Complaint, Plaintiff alleged between 13-22 minutes of pre-, mid-, and post-shift off-the-clock work on any given day. Doc. 1 at ¶ 14. Defendant strongly opposes these estimations. However, if 15 minutes of off-the-clock work per day is used to assess damages, the parties' proposed Settlement falls well-within the range of the possible recovery.

As stated above (and in *Exhibit 3*), the Net Settlement Fund payable to the Class Members will be $361,614.34. Exh. 3, ¶ 15. The average payment to the Class Members under the parties' Settlement is $476.44. The highest estimated payment is $1,884.62. *Id.*, ¶ 16.

In summary, when measured against the estimated maximum exposure of $1,097,359.97, the parties' $617,500.00 Settlement provides substantial relief to the Class Members. Furthermore, when considering the total estimated exposure in addition to the various defenses available to Defendant, it is clear that the parties' Settlement is well-within the range of possible approval. The lack of *any* objections and only five (5) requests for exclusion also supports the conclusion the recovery under the Settlement is fair. This factor supports approval of the settlement.

### 6. The Opinions of Class Counsel, Class Representative, and Class Members Favor Settlement

When deciding whether to approve a class action settlement, "the trial court is entitled to rely upon the judgment of experience counsel for the parties. Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton* at 1330. "[T]he opinion of class counsel is accorded great weight." *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *14 (W.D. Tex. Aug. 20, 2018) (internal quotation omitted). *See also*, *DeHoyos*, 240 F.R.D. at 175 (stating that class counsel's opinion "is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims").

Here, counsel for both Parties endorse the Agreement as fair, adequate, and reasonable. Plaintiffs' Counsel and Defendants' counsel each have extensive experience in prosecuting and litigating class action wage and hour suits like this one. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

Additionally, the response of the Class Members to the Settlement evidences strong support for approval of the Settlement. Of the 764 Class Members, none of them had any objection to the Settlement and only five (5) Class Members requested to be excluded. Exh. 3, ¶¶ 12-13. "[I]n assessing the fairness of a proposed compromise, the number of objectors is a factor to be considered, but a settlement can be fair notwithstanding a large number of class members who oppose it." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1215 (5th Cir. 1978) (citing *Cotton* at 1331). Here, the lack of *any* objectors whatsoever is a strong indication the Settlement is fair and should be approved.

Finally, the Class Representatives obviously support this settlement, as evidenced by their willingness to sign the Settlement Agreement.

### 7.  The Settlement Satisfies the Requirements for Approval Under the FLSA

If the settlement of an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354-55. For all of the foregoing reasons, this settlement is a fair and reasonable compromise and should be approved.

### C.  The Court Should Grant Final Certification and Collective Action Designation

The Court previously certified the Class and Collective for settlement purposes only pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and as a FLSA collective

action. Docs. 35, 37. The Court ruled that, for purposes of the settlement, the Class meets the Rule 23 requirements as well as the FLSA collective action requirements. (*Id.*). The Court also appointed the named Plaintiff and the designated Opt-in Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel. (*Id.*). For these reasons, and the reasons set forth in the Motion for Preliminary Approval, Plaintiff respectfully submits that the Court should grant final certification and collective action designation for purposes of settlement of this matter and should confirm the appointment of the class representatives and class counsel.

**D.  Final Approval of Class Counsel's Fees and Costs, and Service Awards**

**1.  Final Approval of Class Counsel's Fees and Costs is Appropriate**

The Settlement allocates, subject to the Court's final approval at the fairness hearing, $206,166.67 (or 33-1/3% of the Gross Settlement Amount), to Class Counsel for attorneys' fees and up to $15,000 in lawsuit costs.

On December 13, 2021 Plaintiff filed an Unopposed Motion for Approval of Class Counsel's Fees and Costs and Class Representative Service Awards ("Fee Motion"). Doc. 38. The specifics of the requested fees and costs are further addressed by Class Counsel in the Declaration of Kevin Stoops. *Exhibit 2*, Stoops Decl., ¶¶ 44-48, 53. To date, Class Counsel has incurred almost 223.67 hours and nearly $119,150.50 in fees. *Id.* at ¶48. Without including any additional time for Class Counsel, the attorney fees provided by the Settlement provide a multiplier of less than 2.0. By the conclusion of the litigation (including additional work to be performed related to settlement administration and Class Member payment processing), the fees provided by the Settlement will result in a multiplier of approximately 1.5.

While the fee request is addressed in far more detail in the Fee Motion, Class Counsel's request for attorney fees are in line with fee awards approved in other class actions within this Circuit. *See*, *Hill v. Hill Bros. Constr. Co., Inc.*, No. 3:14-CV-213-SA-RP, 2018 WL 280537, at

*3 (N.D. Miss. Jan. 3, 2018) (holding "district courts within the Fifth Circuit typically award class counsel one-third of the common fund as an attorney fee."). *See also*, *In re EZCORP, Inc. Sec. Litig.*, No. 1:15-CV-00608-SS, 2019 WL 6649017, at *1 (W.D. Tex. Dec. 6, 2019) (awarding 33% of total settlement fund for class counsel's fees); *Miller v. Glob. Geophysical Servs., Inc.*, No. 14-CV-0708, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (same); *Campton v. Ignite Rest. Grp., Inc.*, No. CV 4:12-2196, 2015 WL 12766537, at *3 (S.D. Tex. June 5, 2015) (same).

To date, Class Counsel has also incurred approximately $11,328.35 in necessary and reasonable litigation costs. *Exh. 2* at ¶ 53. This amount is expected to remain well below the initially estimated $15,000.00; especially if the final approval hearing is conducted remotely. The amount not used to reimburse costs, will be placed back into the Net Settlement Amount.

"Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action." *In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 U.S. Dist. LEXIS 175515, at *62-63 (N.D. Cal. Dec. 19, 2016); *Leonard v. Baumer (In re United Energy Corp. Sec. Litig.)*, 1989 WL 73211, at *6 (C.D. Cal. March 9, 1989) (quoting *Newberg, Attorney Fee Awards* § 2.19 (1987)). As such, the Court should approve Class Counsel's reimbursement of litigation expenses.

### 2. The Named and Opt-in Plaintiff Service Awards are Reasonable

Plaintiff's Fee Motion also addressed the appropriateness of the Class Representative Service Awards. The Settlement calls for Class Representative Service Awards for Plaintiff Gabel in the amount of $4,000 and for Opt-in Plaintiffs Lake, Maravilla, Schaaf, and Van Thiel in the amount of $4,000. *Exhibit 1*, Settlement ¶ 42(d). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class

representatives. *See, e.g., McClain v. Lufkin Indus., Inc.,* 2010 WL 455351, *24 (E.D.Tex. Jan. 15, 2010) (granting "named Plaintiffs, Class Representatives, and Class Members ... individual Participation Awards" amounting to a "total of $134,000" divided among "twenty-two individuals"); *In re Antitrust Litig.,* 939 F.Supp. 493 at 504 (ND Miss, 1996) ("approving incentive awards of $10,000 to each of the four named plaintiffs"); *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F.Supp.2d 942, 973 (E.D.Tex.2000) ("approving incentive awards of $25,000 to each of two named plaintiffs"); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) (approving "service awards of $5,000").

The Named and initial Opt-in Plaintiffs worked diligently to assist Class Counsel in their activities during the pendency of this litigation.  In particular, the Named and Opt-in Plaintiffs took part in multiple interviews, provided records and documentation to Class Counsel, and provided sworn declaration testimony in support of Plaintiff's Motion for Conditional Certification. The Named and Opt-in Plaintiffs were counseled on the rights and responsibilities of serving as a Rule 23 class representative, and agreed to serve in that capacity in the filing of Plaintiff's Complaint. The Named and Opt-in Plaintiffs satisfied their obligations as class representatives, incurred many hours in service to this case and the class members, and were invaluable in developing the claims, conducting discovery into them, and in reaching the Settlement that is before the Court for approval. *Exhibit 2*, Stoops Decl., ¶¶ 49-50.

### 3.  The Administrator and Administration Costs Should Be Approved

The Settlement Agreement allocates up to $15,000 to Simpluris, Inc., for its services as Claims Administrator. Unfortunately, the claims administration costs associated with the Settlement rain $719 over budget.[4] *Exhibit 3*, Claim Administrator Declaration at ¶ 17.  Simpluris,

---

[4] The reason the claims administration expense ran over budget is because the initial bid only contemplated mailing one settlement check, rather than two checks to each Class Member.

Inc, is well-respected and has been utilized successfully by Class Counsel in numerous settlements of similar nature to the instant litigation. *Exhibit 2*, Stoops Decl., ¶ 51-53. A claims administration expense of $15,719.00 is still very reasonable given the number of individuals involved in the Settlement. *Id.* at ¶ 52. Therefore, Plaintiff requests approval of Simpluris, Inc., as the Claims Administrator and of the allocation of up to $15,719.00 to administration expenses.

### E. Final Approval of Class Counsel is Appropriate

Where, as here, a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. *Id.* at 23(g)(1).

Here, the undersigned law firms of Sommers Schwartz, P.C., Siegel Law Group, P.L.L.C., and Hedgpeth Law Firm, P.C., were appointed as interim Class Counsel. Now, they respectfully ask that the Court to confirm and finalize their appointment as Class Counsel. All three firms are comprised of experienced employment rights lawyers and have been appointed class counsel in many class action lawsuits alleging violations of the Nation's wage and hour laws.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs, by and through her counsel, respectfully requests that the Court (1) grant final approval of the Settlement Agreement, and (2) grant final class certification and collective action designation of the Settlement Agreement and confirm the appointment of Sommers Schwartz, P.C., Siegel Law Group, P.L.L.C., and Hedgpeth Law Firm, P.C. as Class Counsel.

23

Dated:  January 20, 2022                    Respectfully submitted,

                                            s/ *Charles R. Ash, IV*
                                            Charles R. Ash, IV (*Pro Hac Vice*)
                                            MI Bar No. P73877
                                            Kevin J Stoops *(Pro Hac Vice)*
                                            MI Bar No. P64371
                                            **SOMMERS SCHWARTZ, P.C.**
                                            One Towne Square, Suite 1700
                                            Southfield, Michigan 48076
                                            248-355-0300
                                            kstoops@sommerspc.com
                                            crash@sommerspc.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2022, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system, thereby serving all counsel of record.

                                            /s Charles R. Ash, IV
                                            Charles R. Ash, IV (*pro hac vice*)
                                            crash@sommerspc.com

24